GUARDIAN LIFE INS. CO. (LEE v.). See Case No. 8,190.

GUARDIAN MUT. LIFE INS. CO. (EISNER v.). See Case No. 4,323.

GUDERYALEN v. The F. W. GIFFORD. See Case No. 5,166.

GUERARD (GIRARD FIRE INS. CO. v.). See Case No. 5,461.

---

## Case No. 5,855.

### GUERNSEY v. BURLINGTON.

[4 Dill. 372.] [2]

Circuit Court, D. Kansas. 1877.

INTERNAL IMPROVEMENT BONDS—BONDS TO AID ERECTION OF WATER-MILL.

Negotiable bonds made by the defendant township, under legislative authority, reciting that they are issued "for the purpose of aiding in-

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

ternal improvements in said township," are valid in the hands of a holder for value, although they may have been in fact issued to aid in the improvement of a water-power and the erection of a water-mill owned by private persons.

This is an action [by George A. Guernsey] upon bonds and coupons. The following is a copy of one of the bonds:
"United States of America.
"$500.00. Bond of Burlington Township. No. 9.
"County of Coffey,    State of Kansas.
"Burlington township, in the county of Coffey, state of Kansas, promises to pay D. Cross & Sons or order the sum of five hundred dollars, on the 5th day of March, A. D. 1874, and interest thereon at the rate of ten per cent per annum, payable annually, upon presentation of the coupons therefor hereto attached; both principal and interest payable at the banking house of Bates & Brown, in the city of New York.
"This bond is one of an issue of ten thousand dollars, made for the purpose of aiding internal improvements in said township, and in pursuance of an act of the legislature of the state of Kansas, entitled 'An act to authorize Burlington township, in the county of Coffey, to issue bonds,' which act became a law on the 2d day of March, A. D. 1871.
"In testimony whereof, the township trustee. clerk, and treasurer have caused this bond to be issued, duly signed, attested and countersigned, this 5th day of March, A. D. 1871.              Charles Morse, Trustee.
"Countersigned:    H. L. Jarboe, Treasurer.
"Attest:   G. N. McConnell, Clerk."
This bond is endorsed, "David Cross & Sons."

The first section of the act recited in the bond is as follows: "Section 1. That the trustee, treasurer, and clerk of Burlington township, in the county of Coffey (or any two of them), be and they are hereby authorized and directed to issue the bonds of said township to the amount, to the persons, for the purposes, and upon the terms and conditions named in the order and proclamation of said township officers in calling said election of January 11, A. D. 1871, notwithstanding any irregularities or want of authority in law for making the orders and calling the election aforesaid, or whether the said orders and election have been in compliance with the laws of Kansas or not. Said bonds to be payable at such place as may be designated on their face." The other sections provide for levying and collecting a tax to pay the bonds. This act went into effect March 2, 1871.

The question submitted to the electors on the said 11th day of January, 1871, referred to in said act, was whether the township of Burlington, for the purpose of aiding D. Cross & Sons in the improvement of their water-power and mill privileges at or near the town of Burlington, and the putting in operation a flouring mill at or near said town, will issue the bonds of the township to D.

Cross & Sons to the amount of $10,000, payable in one, two, three, four, and five years, with ten per cent interest, on condition, 1st, that the legislature, at the regular session in 1871, shall authorize the issue of said bonds; and, 2d, that Cross & Sons shall execute and secure to the said township five notes for $2,000 each, payable in one, two, three, four, and five years, saying nothing about interest. The proposition carried by a large majority, January 11, 1871. Afterwards the act recited in the bonds in suit was passed. On February 27, 1871, Cross & Sons executed the five notes to the township, and secured the same by a mortgage on the mill and mill property, and thereupon, March 5, 1871, the bonds in suit were issued and negotiated. The said Cross & Sons paid the first two notes to the township and no more, and the township applied the amount in payment of part of its bonds. The answer alleges that the said mill is situate upon the Neosho river, and is operated by water-power obtained by means of a dam erected and maintained by said Cross & Sons, under chapter 66 of the general statutes of Kansas, approved February 6, 1867; that the owners of said mill ground all grain brought to it; but, other than the transaction herein set forth, said township has no interest in the mill and no control over the same. The second count of the answer alleges the foregoing facts, but does not allege any actual notice thereof to the plaintiff. The case was submitted to the court on a demurrer to the second count of the answer. The demurrer was on the ground that the facts stated in the second count of the answer constituted no defence to an action on the bonds in the hands of a holder for value before due, which the plaintiff, in his petition, alleged himself to be.

A. L. Williams, for plaintiff.
A. M. F. Randolph, for defendant.

DILLON, Circuit Judge. The bond recites that it is made and issued "for the purpose of aiding internal improvements (not stating what) in said township," and "in pursuance of the act entitled 'An act to enable Burlington township to issue bonds,' which became a law on the 2d day of March, 1871." The act here referred to does not state on its face the purpose or object of the bonds which it authorizes and directs to be issued. This can only be learned by reference "to the orders and proclamation of the said township officers in calling the said election of January 11, 1871." In its circumstances, in this regard, the case is peculiar, and I am not clear that the purchaser is bound to take notice of the order and proclamation. Inasmuch as the bond states that it is issued to aid "internal improvements in the township," and

as the general legislation of the state shows that "internal improvements" mean such public improvements as may legitimately be aided by taxation, I am inclined to think that the purchaser may assume, without inquiry, aliunde the bond and legislative act, that the bond is within the competency of the legislature to authorize. Gen. St. Kan. 526. If this is so, it is clear that the answer, which does not charge actual notice to the plaintiff, contains no defence to the action. It may also be remarked that the legislature of Kansas authorizes in favor of water-mills the exercise of the power of eminent domain. Gen. St. Kan. 576. There is a line of decisions, perhaps exceptional in character and open to some doubt as to their present soundness, which sustains the validity of such legislation. Cooley, Const. Lim. 534, 536. It seems quite probable, from the reasoning of the supreme court of Kansas in Leavenworth Co. v. Miller, 7 Kan. 523 et seq., that that court would sustain the validity of a legislative act authorizing compulsory aid to erect and maintain a water-mill. In that case the court says "no instance can be shown where the government may aid a thing by the power of eminent domain where it cannot also aid it by taxation." Id. 527.

Since the foregoing was written, the supreme court of the United States has decided the case of Burlington v. Beasley (October term, 1876) 94 U. S. 310, holding that bonds issued under the act of 1872 (Laws [of Kansas, p. 110] c. 68), to aid in the erection of a steam custom grist-mill, not situated on a water-course, or operated by water-power, were valid, and such mills were "works of internal improvements" within the meaning of the act. That decision, in effect, determines this case, for it is clear that if steam custom grist-mills may be lawfully aided by taxation, then such mills operated by water-power may be similarly aided. If there is any distinction between the two classes of mills in this regard, under the line of decisions before adverted to, the distinction is in favor of mills operated by water-power. Our judgment is that the second count of the answer is insufficient. Judgment accordingly.

No further answer was made, and the plaintiff had judgment.

GUERRERO (UNITED STATES v.). See Case No. 15,269.

GUEST, The MARY ANN. See Cases Nos. 9,196 and 9,197.

GUGENHEIM (BARRY v.). See Case No. 1,-061.

GUGENHEIM (PENNSYLVANIA SALT MANUF'G CO. v.). See Case No. 10,954.