HOLLIDAY et al. *v.* UNION BAG AND PAPER CO.

1. A party seeking exemption from the liability of a general partner under the act of 1874, respecting limited partnerships, must show a strict compliance with the act.

2. The statute does not require that the capital should be paid in cash, but when it is paid in property it should be so stated, and its cash value given.

*Error to Probate Court of Arapahoe County.*

THE Union Bag and Paper Company brought an action in assumpsit for goods sold and delivered, against Holliday, Pratt and Williams, as copartners, doing business under the firm-name of Holliday & Co. On the trial, which was by the court, the plaintiff recovered judgment for $1,742.96 and costs, and the defendants sued out this writ of error to reverse this judgment.

It appeared in evidence at the trial that the credit had been given defendants because Williams was a partner and the plaintiff "had faith in his responsibility." Williams was called as a witness on behalf of the plaintiff and testified:

"I commenced doing business with the defendants in May, 1876. I put $12,000 worth of groceries into the firm.

Q. What part was in groceries?

[Defendant objected; objection overruled and exception taken.]

A. I held the notes of Mr. Holliday for $12,000 for cash advanced him in the business. When the copartnership of Holliday & Co. was formed, I gave him up his notes, thereby paying up my capital as special partner in the firm. I did not take charge of any part of the business until October or November, 1875. I took charge of a portion of the stock then to pay the debts of the firm to other parties as far as possible; I expected certain profits from the partnership when I made the agreement; we put $22,000 into the business; I did not make any contracts for them before October first; I did not sell any goods; Holliday and Pratt were the managers; they frequently asked me questions in relation to the business, and I may have answered them, but I did none of the business.

*Cross-examined:* The invoice turned in by Holliday was largely in excess of the amount due me, but certain debts had to be paid; I put fully $12,000 into the business in groceries; the firm remained in business as wholesale and

retail grocers about six months; the stock put in my hands was to pay Holliday & Co.'s debts.

*Re-direct examination:* Of course I considered the $12,000 in groceries my capital in the business; years before I was in partnership with Holliday and took his notes to settle accounts between us; there were six or eight thousand dollars' worth of groceries, besides my interest in the firm; the debts were perhaps equal to the value of the balance of the groceries.

*Re-cross examination:* Holliday's debts were all paid out of the excess of groceries turned into the firm of Holliday & Co."

Messrs. SAYRE, WRIGHT & BUTLER, for plaintiffs in error.

Messrs. SYMES & DECKER, for defendant in error.

ELBERT, J. The first and second assignments are abandoned by the plaintiff in error, and the only question to be resolved is the liability of the defendant Williams.

A party seeking exemption from the liability of a general partner under the act of 1874, respecting limited partnerships (Session Laws, 200) must show a strict compliance with its requirements.

At common law, a partner was liable *in solido* for the debts of the firm. In relaxing this rule, the legislature has adopted a system of precautions essential for the protection of the community. The statute provides for a limited liability, but upon conditions; and he who invokes its protection must show that he has both strictly and substantially complied with the conditions, upon which alone, immunity from his common law liability is granted. *Haviland* v. *Chase*, 39 Barb. 283; *Argall* v. *Smith*, 3 Denio, 435; *Richardson* v. *Hogg*, 38 Penn. St. 153; *Haggerty* v. *Porter*, 103 Mass. 17; *Pierce* v. *Bryant*, 5 Allen, 91.

The 7th section of the act requires from the special partner an affidavit, stating "that the amount in money, or property at cash value, specified in the certificate to

have been contributed by such special partner, has been actually and in good faith contributed and applied to the common stock of such partnership." The 8th section provides "that if any false statement shall be made in such certificate or affidavit, all persons interested in such partnership shall be liable for all the engagements thereof as general partners."

The affidavit of the special partner Williams, attached to the certificate in this case, states that he "has contributed to the said firm of Holliday & Company the sum of twelve thousand dollars, which said sum has been actually and in good faith contributed to the business and applied to the common stock of said firm." The only interpretation to be given to this language is, that it was $12,000 in cash.

Whether the contribution of Williams to the capital stock was in groceries or in the notes of Holliday, which he surrendered, and for the amount of which he received credit on the books of the new firm, can make no difference. In either view, the certificate and affidavit contains, within the meaning of the statute, a false statement, and in such case, the statute is explicit, that all interested in the partnership shall be liable as general partners.

The statute does not require that the capital should be paid in cash, but it obviously was intended, that when it was paid in property it should be so stated, and its cash value given. One of the essential precautions of the law is, that public notice must be given of the amount paid in, so that the public may be enabled to estimate correctly the credit to be given to the firm, and it is not difficult to see that $12,000 in cash would form a very different basis of credit from $12,000 in groceries or promissory notes. It was the evident intention of the legislature to prevent parties putting in property of uncertain and estimated value and calling it cash, thus obtaining a credit to which their capital would not entitle them.

It can make no difference that Williams acted in good faith, and supposed the property contributed worth $12,000.

A special partner cannot be permitted to publish to the world that he has contributed $12,000 in cash to the capital stock of the firm, when, in fact, he has only contributed property which he valued at that sum. To allow it would be to invite and encourage fraudulent practices under the act.

The judgment of the court below must be affirmed with costs.

*Affirmed.*